25-2068 Briggs v. University of New Mexico. Good morning, Judge Ebel, Judge Federico. May it please the court. My name is Travis Jackson and I represent the plaintiff appellant Michael Briggs. This appeal arises from the termination of Mr. Briggs' employment at the University of New Mexico after he was falsely accused of sexual assault. Mr. Briggs brought claims under Title IX, Title VII, and the New Mexico Human Rights Act alleging that UNM unlawfully discriminated against him based on sex. Mr. Briggs also brought claims under state law alleging breach of implied employment contract based on a New Mexico Supreme Court case. Could you try to speak a little closer? Yes, sir. I apologize. Mr. Briggs primarily appeals the district court's grant of summary judgment against his Title IX claim and how that was applied to his other claims for discrimination. Mr. Briggs also appeals the court's striking of a critical declaration by a high-level official at UNM's Health Sciences Center, Dr. Richard Larson. Mr. Briggs also appeals the district court's earlier dismissal under 12b6 of his implied employment contract claim. In our view, and I know as you've seen throughout the briefs, we believe that DOE II provides the analytical framework for a Title IX claim like this. In DOE II, this court held that procedural deficiencies in a Title IX plaintiff sexual assault investigation combined with additional statistical evidence of sex bias are sufficient to survive summary judgment. Importantly, DOE II was decided during the pendency of the underlying lawsuit. And so in that lawsuit, we went out and obtained discovery to present exactly the type of statistical evidence that DOE II called for. Between DOE I and DOE II, there were two types of statistical evidence presented to the court. In DOE I, the plaintiff submitted evidence of a disparity between complainants and respondents and said that there were more female complainants and more male respondents, and that's some sort of an inference of discrimination. And in DOE II, this court rejected that. And in DOE I, this court rejected that. In DOE II, the plaintiff brought different evidence. In DOE II, the plaintiff brought evidence that in making discretionary decisions, like deciding when to investigate a claim, when to find against a respondent in a claim, and when to discipline a respondent. If you could show statistical disparity between females and males and how they were treated in those discretionary circumstances, that would survive summary judgment. And that is exactly what we did here. Counsel, a couple questions about that. As I recall, DOE II, this court mentioned that when it looked at the data, that it had a relatively small sample size of data. Do I have it right that there's more data available here that was presented in this case? Substantially more, Your Honor. And so what we found was there were, and there were more cases than we were allowed to discover. And so we served a subpoena, and there were thousands of potential investigative files. UNM is the party who specifically limited those files to sexual assault files. UNM is the party who identified those that they thought were relevant to the claims against Mr. Briggs. UNM looked at the policies he's alleged to have and said, these are the files that we think you can compare him to. And so we subpoenaed all of those, and we didn't get all of those. The magistrate judge found a compromise where she said, you can have 250 of this type of file, you can select this other type. And that's what our statistic is based on. The rulings from the court, the limitations by UNM. But yes, the statistical analysis here, the data set is much larger, and the math is damning for UNM. Is that enough to reverse, or maybe a more general question, Doe 2, as you pointed out, has a recitation of a couple of reasons why it reversed in that case. Procedural irregularities, the compelling nature of the statistical data, and you've argued all that here, but how do we weigh those, or your different arguments? Is just one enough to reverse, or do we just look at them as a whole? I think the cases say that you look at the totality of the circumstances, but I would argue here, those factors in this case are stronger in every regard. And so when you look at the public pressure that was on UNM, stronger than any case that's before any court. Here we had a DOJ investigation in which they found that UNM had violated Title IX after investigating it for a year. This followed reports in the media about football players raping women. After DOJ found UNM had violated Title IX, UNM enters into a settlement agreement with DOJ, where for three years they're going to be monitored by DOJ to see if they are being aggressive about sexual assault. That settlement occurs nine days before this report walks in the door. And so there's no case that I've seen where there's more public pressure on a university to aggressively investigate someone accused of sexual assault. So I think the data factor weighs heavily here. On the procedural irregularity issue that you raised, I would again submit that the evidence here is stronger than in any case that I've seen. Here we have the highest level officials at UNM's flagship, at New Mexico's flagship university, intervening in a case despite policy saying they shouldn't do that. UNM's president intervenes to overturn the investigator's finding of no policy violation. Ex parte doesn't even tell Mr. Briggs what the nature of the appeals. Gives him no opportunity to be involved in that. Says I'm turning over the decision of my investigator that there's no policy violation here, and now we move to termination. And as soon as she tells her administrators that they're moving to termination, what happens next is the Vice President of Human Resources, Dorothy Anderson, intervenes to steer and direct and pressure Mr. Briggs' supervisors to terminate him. One of them recuses himself because he thinks that the entire process is so irregular. These aren't low-level people. These are people who've been at UNM for 25 years who had never seen a process so bad, so irregular, so biased. So the first person recuses himself because he finds this not fair to Mr. Briggs or regular based on the other processes that he's seen. It then gets elevated to the Chancellor of the UNM Health Sciences Center. The UNM Health Sciences Center is Mexico's largest health system. This is a very high-level person at UNM, almost equal to UNM's president at that time. And so he says, I don't think I can terminate Mr. Briggs because under UNM's policies, they have to look at mitigating factors and aggravating factors. And all of the mitigating factors favored Mr. Briggs. He'd never been complained about anything in his entire history at UNM. He'd only received positive performance reviews. He was an exemplary employee as the president acknowledged. And so he said, I think that these mitigating factors weigh against termination. But behind the scenes, administrators were telling him, you have to fire Mr. Briggs. This comes right after the public pressure, the DOJ investigation, the DOJ settlement. And so I would submit that the procedural irregularities here are much higher than anywhere else. It's also important to note that we pointed out that there were witnesses who were not ever interviewed, including one who had a relationship with the same woman. And when we examined the investigator under oath, she claimed to have emailed him. But unlike all of her other files, there was no email in that file showing that she actually tried to reach out to him. So she testified under oath that she had. He testified under oath that nobody had ever reached out to him. So when we asked for the email that she claims showed that she contacted him, UNM acknowledged that it deleted the email. All of her emails were deleted within a month, I think, of her leaving UNM, despite UNM's policy requiring that they retain it for, I think, three years and state statutes. Highly irregular illegal conduct, some might say. And so I would submit to you that the factors that you've described are higher in this case than almost any case that I've seen. Counselor, can I ask you about the Dr. Larson declaration? As I understand it, you know, obviously it was struck by the district court. You're but what was struck about it by the district court wasn't the entirety of it if I have it right. But it really, you're already shaking your head no, so do I have that wrong? I don't know. And so in her ruling, she says she was striking those portions of it that were contradicted by her prior testimony. Yes. And we had multiple paragraphs that provided procedural irregularities, including the deletion of his email, including someone within the UNM Health Sciences Center saying they wanted to cut Mr. Briggs' genitals off. We had all of these sorts of statements in there that he never testified against. I don't think he testified against any of that. He never, and but that wasn't considered. To me, that's evidence against summary judgment and was never considered. But the thrust of the arguments here before us, at least as it was presented and I understood it, was Dr. Larson's sort of bottom line conclusion that this investigation was biased. I think that's part of it. Okay. I think part of it was he was highlighting the irregularities that he saw. He was never asked under oath about irregularities. Do you find this process to be different than UNM's normal process? He was never asked that, never said no. The question that was asked of him during his, my deposition of him, was I gave him a long leading question and he says, well I don't think that's a fair way to characterize what I said. And so, but I never asked him, did you think that these were irregular? I never asked him, did you feel that anyone pressured you to terminate Mr. Briggs? We now know from the deposition testimony of others, including the Chancellor of the Health System and Ms. Anderson herself, that she did pressure these supervisors to fire Mr. Briggs. It's not in dispute. His concern, one of his concerns, was that the university and sophisticated counsel were setting him up to be the male decider of the termination so that he could be sued and that they could then defend themselves by saying, well the person who made the decision is in the same class. And so behind the scenes you had a female vice president of human resources, you had a female university president, you had a female OEO director, all pushing for his termination despite UNM policies that say you have to consider whether he'd ever been accused of anything like this before. You have to consider the evidence. That was the other thing that Mr. Larson said is, they presented me with a report. Under the policies for UNM, I'm required to look at the evidence before I sanction my employee. So I asked them, can I please see the evidence for Mr. Briggs? They said, no, you're not allowed to look at that. You've got to assume it's not true. I mean, you've got to assume it's all true because he didn't dispute it. We pointed out in the record that he did dispute it, repeatedly, and today still denies all of this. And so I think that Dr. Larson's declaration goes far beyond what's been presented by UNM. He also talks about Mr. Briggs's employee record. He also talks about the organization of the UNM Health Sciences Center. And so it's a hospital system with a large campus with different operations. Mr. Briggs was in the research operation. The woman who made the complaint was in the clinical operations. Those are separate. They're not the same building. They don't fall under the same structure. These weren't co-workers, which is exactly why the investigator found that there was no policy violation. She found that you couldn't have created a hostile work environment because you don't work together. I see that I have three minutes left. I'd like to reserve that. Thank you very much. Thank you, Mayor of the Police Court. My name is Luke Selganik. I represent the UNM defendants in this case. You're soft-spoken. Would you try to get close to that microphone? Yes, sir. Is this a little bit better? Well, pull the microphone up towards you a little bit more. Is that better? Maybe. We'll hear. Thanks. I don't think there's any dispute in the record here that there was extensive proceedings and process that was available to the plaintiff in this case because of this incident. There was a thorough investigation. Numerous individuals were interviewed. There was a thorough 28-page preliminary letter of determination, the plaud investigative report that was issued in this case. Mr. Briggs participated every step of the way and had the opportunity to appeal on numerous occasions that he did not appeal. But what was really important in this case was Mr. Briggs' own admissions in this case. And those were just really damaging to his position and his arguments here on appeal. He admitted that he met the complainant for drinks at a restaurant, that they went to his house and they continued to drink alcohol, that she vomited while that they were there, that he gave her his toothbrush because she vomited, that she had a shower because she vomited. She never told plaintiff that she wanted to have sex. He initiated sexual activity. These are all his admissions. He performed oral sex on her and she did not respond. That's his admission. And afterwards she was too inebriated to drive so he drove her home in her car. And when they got there, plaintiff spoke with her husband and the first words out of his mouth were, she's not doing well. The husband saw the complainant and took their child with him to work because she was too inebriated to care for their own child. And afterwards the complainant texted plaintiff and asked what had happened and his response was, what are you gonna tell your husband other than that you drank too much? And then several days later there was a police investigation and in talking to the police, plaintiff denied any penetration. When the police officer told him that there was going to be a DNA test, he then changed his tune and admitted that there was penetration or that there could have been. So this is all important for the university because the issue for the was lack of consent. Under the university's policies, consent must be affirmative. It cannot be inferred from silence. And consent to one activity like kissing is not consent to sex. Now the issue here is has plaintiff been able to make a prima facie showing using indirect evidence and he uses the erroneous outcome framework and he points to three things. He points to procedural irregularities, external pressures, and statistical evidence and he fails on all of those. So the question for this court is where does this case fit on the scale between Doe 1 and Doe 2? Before you get to that counsel, you just made a good point about McDonnell Douglas. Yes sir. And the prima facie prong one that Mr. Briggs would have the burden on. I got to tell you it wasn't clear to me from the briefs where all this was going to fit McDonnell Douglas. Meaning whether or not this was we're talking about prima facie case not being met here or whether we're talking about pretext. So it's your position here that Mr. Briggs doesn't make out a prima facie case because his argument of the erroneous outcome only fits in that prong of McDonnell Douglas? I understand sir. Yes he doesn't make a prima facie case and when the burden shifts the defense has made a legitimate and additionally he has not made a pretext either. And I think that the cases do sometimes mix and match the same evidence for prima facie as for pretext. And I don't think that that's necessarily inappropriate in all instances. But he doesn't even make the in this particular case. So where where does this case fit on the spectrum between Doe 1 and Doe 2? Doe 1 there was external pressure from the Department of Education but it was gender-neutral. There is statistical evidence that the plaintiff provided but it was just raw numbers of there were this many complaints against men and this many against women and the court said that's not enough. And then in terms of procedural irregularities in footnote 18 of Doe 1 there were extensive procedural irregularities in that case. However the court said quote a few procedural irregularities in this vein are not necessarily uncommon or even troubling. And the court went on to say sexual misconduct investigations and proceedings will not be perfect. So reading Doe 1 I think the question is is does the accumulation of irregularities do they all disfavor the respondent and there's no plausible explanation for that favoritism. Doe 2 on the other hand was the opposite. In Doe 2 court reversed the employees termination. There was substantial evidence that supported the opposite outcome. The court described it as quote replete with procedural deficiencies all of which favored Jane and disfavored him despite substantial reasons to discount her allegations. And unlike in Doe 1 here we have a more egregious investigation. And then the plaintiff also presented statistics but those statistics went above and beyond Doe 1. They showed disparate outcomes in the discipline between men and women. So where does this case fit on this spectrum? And I think the answer is if it's on the other side of Doe 1 the evidence here is much stronger for the defense than the evidence was in Doe 1. In terms of procedural irregularities what we're really talking about here was was there evidence to doubt the outcome of the investigation? And in addition to the admissions that we just went through there was also objective evidence. The complainant sent a text to her husband while she was at plaintiff's house and but she she meant to send a text to her husband but she texted somebody out of state because she was inebriated. She texted the wrong person. She went and saw a sexual assault nurse examiner and she got an examination. That evidence was in the record and there were injuries consistent with sexual assault, bruising, genital tears. And then complainant texted plaintiff and asked him what had happened. The facts that were before OEO led OEO to conclude that under the preponderance of the evidence that it was more likely than not that plaintiff initiated and engaged in unwelcome sexual activity. And that was what moved the ball for the president. That was what moved the ball for Dr. Paul Roth who was the decision-maker in this case. And against the backdrop of this heavy evidence plaintiff argues well wait the complainant had a motivation to lie because she was married. And complainant had been arguing with her husband that day. And complainant had kissed another man on another occasion. And complainant had deleted text messages between her and her husband even though some of those text messages were recovered. Both the complainant and her husband were interviewed about those text messages and the OEO considered that as part of its investigation. But notably all of these issues they don't touch on whether or not the complainant had the ability to consent or whether or not she did consent. Counsel, so as we're thinking about Doe 1 versus Doe 2 and both parties are presenting how your cases align with those two and going through the list and correctly about how we should think about the evidence in this case. But I want to ask about what I think I hear you also saying. Which is even if we were to accept Mr. Briggs presentation that there are some procedural irregularities whether it's more like Doe 2 or Doe 1 it's somewhere on that spectrum. And that there is evidence of pressure on UNM and particularly the timing with the Department of Justice monitoring settlement. The deletion of the emails, the text messages, the president stepping into overrule, all of this. Do I hear you saying that even if we accept all of that in Mr. Briggs favor he still loses because it was an erroneous outcome because his own admissions make it as such that the end result was that he could still be terminated because he essentially admitted to non-consensual sexual activity? Yeah, that's a big question and thank you. Yes, I think that the first prong erroneous outcome is actually divided into that there's substantial evidence that would have pointed the other way as well as procedural irregularities. It's kind of broken down into two prongs and I think the floor case which is a district court opinion from New Mexico which is cited in the briefs does an excellent job of further digesting these cases. But yes, I would say that there are no procedural irregularities. That everything that plaintiff points to they are in fact not procedural irregularities at all. If the court was to interpret them as procedural irregularities they were de minimis and ultimately the evidence overwhelmingly supports UNM's decision. So even if there were procedural irregularities in terms of the investigation his own statements enough or allow us to reach a conclusion that there was no error in terms of the outcome? Yes, and I think that the touchstone is is there any indication that that the outcome here was due to gender bias and and none of these facts that plaintiff points to have anything to do with gender bias. And you know when we talk about the external pressure you know from the Department of Justice that was gender neutral. They weren't saying go out and get men. It was go out and do a better job of investigating sexual assaults, all sexual assaults, right? So that doesn't move the ball. And in terms of the statistics that were provided, and I think that this is a an important point, the statistics were raw statistics. They were numbers of complaints made against men, numbers of complaints made against women, numbers of investigations, and outcomes. And it simply was insufficient. It was the same kind of raw data that was provided in Doe 1. Well of complaints that were filed against male versus females just in terms of misconduct or sexual misconduct, whereas Doe 2 was discretionary decisions that university made, as in we're not going to investigate at the same rate against male or females versus males. And so that's clearly what was presented here. So isn't that enough to distinguish Doe 1 versus Doe 2 from the statistical data set? No, Doe 2, I would say, went further than that. Doe 2, not only was there a question about the discretion that the university had in investigating or choosing not to investigate, but there's also differential outcomes. There was men who made complaints against women that weren't investigated, women who made complaints against women that were, and there was also disparate punishment. There was a woman who engaged in non-consensual touching, and she got a deferred suspension, but a man who engaged in the same offense, he was suspended. So it was beyond merely those things. In this case, what we've got is the evidence failed to establish that men and women were accused of the similar conduct, whether the similar conduct was or was not investigated, and whether or not there was disparate punishment between men and women. All of that is absent, and the district court correctly, reading Doe 1 and Doe 2, looked at them and said, I can't do anything with this. These basic raw numbers, and you know, to the extent that that plaintiff makes the argument that this is what the university provided in discovery, so that must all be apples to apples, that's incorrect. In the record at Bates number 361 and 371, I think those are the sites, the data the UNM provided, the OEO reports, they were on a spectrum, and the spectrum was from inappropriate touching to violent sexual assault, and I think that that's an important factor. I think what you would need to show, if the plaintiff were to able to show that a man accused of penetrative sexual assault and a woman accused of penetrative sexual assault got disparate punishment, I think then he would be getting somewhere, but that's not the evidence that he presented. As saying, as I was saying, I do think that the defense here also made a legitimate non-discriminatory case, and that there's been no showing of pretext. I do want to touch on Larson's declaration. You know, Larson's declaration, the court struck it to the extent that it contradicted his earlier testimony, and did so within its discretion. Dr. Larson testified during his deposition that he did not have any concerns about bias, flawed outcome, or that things were not investigated. He was asked that question. His response was, I think that's a misinterpretation of my concerns. His declaration then says, I have concerns about bias, flawed outcome, and things that weren't investigated, and the district court correctly said, that's contradictory evidence. I see that I'm out of time. Thank you. Thank you. On summary judgment, the district court may not make credibility determinations or weigh the evidence. UNM has, throughout this proceeding, presented evidence that's contested on both sides about whether there was consent, or about whether there was incapacity, whether there was penetration. We are arguing the facts of the dispute of sexual assault here today. I know you've got limited time, but help me understand, is there a dispute over whether she was intoxicated? Yes, ma'am. And so the evidence below is that the vomiting, is that not evidence of intoxication? It's evidence that she had an upset stomach, and so there's a dispute as to whether she was intoxicated. And so, UNM has not highlighted the evidence that shows that she, that they only had a couple of beers, which she said was normal for her, and that she wouldn't have been intoxicated. And so, no, that doesn't, there's a dispute as to intoxication. I think that's the best point I can make. Thank you. And so, I can also tell you that the DNA testing was negative. There was drug testing done that was negative. All of that was ignored by UNM. So the evidence that would have gone against the plaintiffs, the claimants' claims, wasn't considered by UNM. But again, we're arguing a dispute of fact as to whether there was consent, which there's always that, I think, in a sexual assault case. And so, to go back to Judge Federico's point, his question about what's the difference between a prima facie burden and pretext, in Doe 2, they looked at the evidence for both. And so, if you go to page 831, for example, in looking at the prima facie case, this court looked at whether there was a one-sided investigation. This court looked at whether there were procedural regularities. This court looked at whether there was public pressure. So, all of those were factors that were considered in the prima facie case. And as we pointed out in the Byrd case, the prima facie burden under McDonnell Douglas is minimus. And so, the fight is always over pretext. And then, Doe 2 lays out the blueprint for establishing pretext in a case like this. And I want to circle back to the statistics. In this case, we absolutely have statistics that compare the gender of the respondents on very specific types of claims, how they were investigated, disciplined, and found to have violated policy violations. So, I would admit that we have done exactly what Doe 2 instructed litigants in lower courts to look at. I don't think it would be worthwhile to spend my last 12 minutes, seconds, to argue the facts. And so, I will just thank you for your time and for your consideration of our case. Thank you. The case stands submitted. Counsel are excused.